James E. Cecchi
Caroline F. Bartlett
Zachary S. Bower (*pro hac vice* to be filed)
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, PC
5 Becker Farm Road
Roseland, NJ  07068-1739
(973) 994-1700
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRANKO KRMPOTIC and SUSAN KNAPP, individually and on behalf of all others similarly situated,<br><br>                          Plaintiffs,<br><br>v.<br><br>TAKATA CORPORATION, TK HOLDINGS, INC., MERCEDES-BENZ USA, LLC, a Delaware Limited Liability Company, DAIMLER AG, a foreign corporation,<br><br>                          Defendants. | Civil Action No.<br><br><br><br>**COMPLAINT AND<br><u>DEMAND FOR JURY TRIAL</u>** |

## TABLE OF CONTENTS

Page

NATURE OF CLAIMS ................................................................................................1

JURISDICTION AND VENUE ...................................................................................7

THE PARTIES ..............................................................................................................8

   I.   Takata Defendants .........................................................................................8

   II.   Mercedes-Benz Defendants ..........................................................................9

   III.  Plaintiffs ......................................................................................................10

       A.   Plaintiff Branko Krmpotic ..................................................................10

       B.   Plaintiff Susan Knapp .........................................................................11

GENERAL FACTUAL ALLEGATIONS ..................................................................13

   I.   Takata is a Major Manufacturer of Airbags and Inflators. ........................16

   II.   Takata's Airbags Have A Common, Uniform Defect ..................................17

       A.   Takata Recklessly Chose An Inexpensive and Dangerous Propellant.......................17

       B.   The Mercedes-Benz Defendants Were Fully Informed Regarding the Use of Ammonium Nitrate ....................................................21

   III.  The Mercedes-Benz Defendants Sold Their Vehicles As "Safe" and "Reliable".........................................................................................21

   IV.  Defendants' Inadequate Recalls and Failure to Assist Impacted Consumers ...................23

       A.   Slow and Inadequate Recalls ..............................................................23

       B.   Failure to Provide Replacement Vehicles...........................................24

TOLLING OF THE STATUTE OF LIMITATIONS ..................................................25

       Fraudulent Concealment ............................................................................25

       Estoppel......................................................................................................25

       Discovery Rule...........................................................................................26

CLASS ACTION ALLEGATIONS ...........................................................................26

       The Nationwide Consumer Class...............................................................27

       The State Consumer Classes .......................................................................27

       Numerosity and Ascertainability ................................................................28

       Predominance of Common Issues................................................................28

       Typicality ....................................................................................................31

       Adequate Representation .............................................................................31

       Superiority...................................................................................................31

i

REALLEGATION AND INCORPORATION BY REFERENCE ...............................................33

CLAIMS FOR RELIEF ..........................................................................................................33

    A.   Federal Claim Against All Defendants...................................................................33

COUNT 1 - Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq. .............33

    B.   State and Common Law Claims Against the Takata Defendants ..............................37

COUNT 2 - Fraudulent Concealment ......................................................................................37

COUNT 3 - Breach of Implied Warranty of Merchantability, N.J.S.A. § 12A:2-314 ................40

COUNT 4 - Breach of Implied Warranty of Merchantability, I.C.A § 554.2314 .......................41

COUNT 5 - Violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, et seq........42

COUNT 6 Violation of the Private Right of Action for Consumer Frauds Act
    Iowa Code § 714H.1, et seq. ..........................................................................................47

COUNT 7 - Negligence ..........................................................................................................51

    C.   Common Law and State Claims Against The Mercedes- Benz
    Defendants ...............................................................................................................52

COUNT 8 - Fraudulent Concealment ......................................................................................52

COUNT 9 - Breach of Implied Warranty of Merchantability, N.J.S.A. § 12A:2-314 ................56

COUNT 10 - Breach of Implied Warranty of Merchantability, I.C.A § 554.2314 .....................57

COUNT 11 - Violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, et seq.......58

COUNT 12 - Violation of the Private Right of Action for Consumer Frauds Act Iowa
    Code § 714H.1, et seq. ...................................................................................................63

COUNT 13 - Negligence ........................................................................................................67

COUNT 14 - Negligent Failure to Recall ................................................................................69

COUNT 15 - Unjust Enrichment .............................................................................................70

DEMAND FOR JURY TRIAL ................................................................................................72

Plaintiffs, based on personal knowledge, and upon information and belief as to all other matters, allege as follows:

## NATURE OF CLAIMS

1.      People trust and rely on the manufacturers of motor vehicles and of critical safety devices to make safe products that do not give rise to a clear danger of death or personal injury. An airbag is a critical safety feature of any motor vehicle. Airbags are meant to inflate rapidly during an automobile collision to prevent occupants from striking hard objects in the vehicle, such as the steering wheel, dashboard, or windshield.

2.      An airbag supplier must take all necessary steps to ensure that its products—which literally can make the difference between life and death in an accident—function as designed, specified, promised, and intended.  Profits must take a back seat to safety for the airbag manufacturer, and also for the automobile manufacturer when it makes its product sourcing decisions.

3.      Similarly, an automobile manufacturer must prioritize the safety of the component parts it puts in its vehicles, particularly component parts that are safety features and should not prioritize profits over the safety of its customers.  Ultimately, it is the vehicle manufacturer that provides the specifications for all safety-related component parts installed in its vehicles and must approve all component parts prior to their installation.

4.      This action concerns defective airbags manufactured by Defendant Takata Corporation and its related entities ("Takata"),[1] and equipped in vehicles manufactured by

---

[1] On June 26, 2017, Takata announced that it has sought protection in bankruptcy both in Japan and the United States.  It is unclear at the time of this filing how the bankruptcy will affect claims against the Takata Defendants.

1

Defendants Mercedes-Benz USA, LLC and Daimler AG (collectively, "Mercedes-Benz" or the "Mercedes-Benz Defendants").

5.      The Takata airbags at issue in this litigation share a common, uniform defect: the use of ammonium nitrate, a notoriously volatile and unstable compound, as the propellant in the defectively designed inflators (the "Inflator Defect"). The inflator, as its name suggests, is supposed to inflate the airbag upon vehicle impact. In the milliseconds following a crash, the inflator ignites a propellant to produce gas that is released into the airbag cushion, causing the airbag cushion to expand and deploy.  The term "airbag" shall be used herein to refer to the entire airbag module, including the inflator.

6.      The following basic illustration depicts Takata's airbag module:



7.      In the late 1990s, Takata shelved a safer chemical propellant in favor of ammonium nitrate, a far cheaper and more unstable compound that is much better suited for large demolitions in mining and construction.

8.      Under ordinary conditions, including daily temperature swings and contact with moisture in the air, Takata's ammonium nitrate propellant transforms and destabilizes, causing irregular and dangerous behavior ranging from inertness to violent combustion. When Takata decided to abandon the safer propellant in favor of the more dangerous but cheaper one, it was aware of these risks and did so over the objections and concerns of its engineers. Tellingly, Takata is the only major airbag manufacturer that uses ammonium nitrate as the primary propellant in its airbag inflators.

9.      As a result of the common, uniform Inflator Defect, instead of protecting vehicle occupants from bodily injury during accidents, the defective Takata airbags too often either fail to deploy or violently explode, sometimes expelling metal debris and shrapnel at vehicle occupants.  As of March 2017, complaints to regulators blame Takata airbags for at least eleven deaths and 180 injuries.

10.     When the Mercedes-Benz Defendants approved and purchased Takata's airbags for installation in their vehicles, they were aware that the airbags used the volatile and unstable ammonium nitrate as the primary propellant in the inflators.

11.     The volatility and instability of Takata's ammonium nitrate propellant has been underscored by the glaring and persistent quality control problems that have plagued Takata's manufacturing operations.

12.     The serious danger posed by the Inflator Defect was first disclosed to U.S. safety regulators in 2008. As such, by at least this date, the Mercedes Defendants were on notice of the

3

defects alleged herein, but did nothing to notify its customers that their automobiles were installed with potentially fatal component parts.

13.     Further recalls of AN airbags were issued in 2009, 2010, 2011, 2013, and 2014, providing the Mercedes-Benz Defendants with repeated warnings and specific knowledge that their vehicles were equipped with dangerous Takata airbags containing ammonium nitrate, but the Mercedes-Benz Defendants continued to refuse to issue a recall.

14.     On May 18, 2015, Takata filed four Defect Information Reports ("DIRs") with NHTSA and agreed to a Consent Order regarding its (1) PSDI, PSDI-4, and PSDI-4K driver air bag inflators; (2) SPI passenger air bag inflators; (3) PSPI-L passenger air bag inflators; and (4) PSPI passenger air bag inflators, respectively. And in testimony presented to Congress in 2015 following the submission of its DIRs, Takata's representative admitted that the use of ammonium nitrate is a factor that contributes to the tendency of Takata's airbags to rupture, and that as a result, Takata will phase out the use of ammonium nitrate. Still, Mercedes refused to issue a recall.

15.     Further, in its DIRs, Takata acknowledged that the defect is present in inflators that were installed in vehicles as replacement parts through prior recalls, necessitating a second recall of those vehicles.

16.     As a result of the Mercedes-Benz Defendants' failure to act in appropriate time frame to recall the affected inflators and their related decision to continue to install their new automobiles with Takata airbags containing ammonium nitrate, the recalls of the Class Vehicles now underway cannot be implemented effectively. Defendants have acknowledged that the process could take several more years because of supply constraints.

17.     Defendants have placed consumers – including Plaintiffs – in the frightening position of having to drive unsafe vehicles for many months (or even years) while they wait for Defendants to replace the defective airbags in their cars. For example, Mercedes informed Plaintiffs not only that it will not provide a loaner vehicle or a replacement airbag, but also that owners of affected vehicles should prohibit anyone from riding in the passenger seat.  As a result, Mercedes consumers are left without a safe vehicle for life's basic needs:  transportation to and from work, to pick up children from school or childcare; even running to the supermarket has become a major safety risk that Plaintiffs and the other Class Members should not have to bear.

18.     Takata and the Mercedes-Benz Defendants knew or should have known that the Takata airbags installed in the Class Vehicles were defective. Both Takata and the Mercedes-Benz Defendants, who concealed their knowledge of the nature and extent of  the defect from the public while continuing to advertise their products as safe and reliable, have shown a blatant disregard for public welfare and safety. Moreover, the Mercedes-Benz Defendants have violated their affirmative duty, imposed under the Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), to promptly advise customers about known defects.

19.     Even before purchasing inflators from Takata, the Mercedes-Benz Defendants were aware that Takata used volatile and unstable ammonium nitrate as the primary propellant in its inflators, and thus the Mercedes-Benz Defendants were on notice of the Inflator Defect even before they installed the inflators in their vehicles, because Takata reviewed the designs of the inflators with the Mercedes-Benz Defendants and the Mercedes-Benz Defendants approved those designs. The Mercedes-Benz Defendants were further put on notice of the Inflator Defect no later than 2008, when Honda first notified regulators of a problem with its Takata airbags.

Because their vehicles also contained Takata airbags, the Mercedes-Benz Defendants knew or should have known at that time that there was a safety problem with their airbags, and the Mercedes-Benz Defendants should have launched their own investigations and notified their customers. That responsibility only grew as incidents multiplied.

20.     Instead, Defendants put profits ahead of safety. Takata cut corners to build cheaper airbags, and the Mercedes-Benz Defendants sold Plaintiffs and Class members vehicles that they knew or should have known contained those defective airbags. For several years Defendants engaged in a pattern of reckless disregard, deception, concealment, and obfuscation. Only very recently – on the heels of media scrutiny and public pressure – have the Mercedes Defendants begun recalling their vehicles in the United States with the Inflator Defect.

21.     As a result of Defendants' misconduct, Plaintiffs and members of the proposed Classes were harmed and suffered actual damages. The defective Takata airbags significantly diminish the value of the vehicles in which they are installed.

22.     Further, Plaintiffs and the Classes did not receive the benefit of their bargain; rather, they purchased and leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation. Purchasers or lessees of the Class Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the Inflator Defect been disclosed. Indeed, no rational consumer would purchase a vehicle equipped with an ammonium nitrate airbag if fully informed about the inflator defect. Plaintiffs and the Classes were deprived of having a safe, defect-free airbag installed in their vehicles, and Defendants unjustly benefited from their unconscionable delay in recalling their

defective products, as they avoided incurring the costs associated with recalls and installing replacement parts for many years.

23.     Plaintiffs and the Classes also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, including but not limited to expenses and costs associated with taking time off from work, paying for rental cars or other transportation arrangements, and child care.

24.     The defective Takata airbags create a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury.

## JURISDICTION AND VENUE

25.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

26.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendants, because they conduct substantial business in this District; some of the actions giving rise to the Complaint took place in this District; and some of Plaintiffs' claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, committing a tortious act in this state, and causing injury to property in this state arising out of Defendants' acts and omissions outside this state; and at or about the time of such injuries Defendants were engaged in solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by

Defendants anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

27.     This Court also has personal jurisdiction over the Takata Defendants and the Mercedes-Benz Defendants under 18 U.S.C. § 1965 because they are found or have agents or transact business in this District.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, Defendants have caused harm to Class members residing in this District, and Defendants are residents of this District under 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this district.  Also, venue is proper in this district pursuant to 18 U.S.C. § 1965.

## THE PARTIES

I.      **Takata Defendants**

29.     Defendant Takata Corporation ("Takata") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan. Takata is a specialized supplier of automotive safety systems that designs, manufactures, tests, markets, distributes, and sells airbags. Takata is a vertically-integrated company and manufactures component parts in its own facilities. Takata, either directly or through its wholly-owned subsidiaries, manufactures airbags for distribution in the United States and Florida, including the airbags at issue in this litigation. Takata delivers its products, including the airbags at issue in this litigation, into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

30.     Defendant TK Holdings Inc. ("TK Holdings") is a subsidiary of Takata Corporation and is headquartered in Auburn Hills, Michigan. TK Holdings sells, designs, manufactures, tests, markets, and distributes airbags in the United States. TK Holdings both

8

directly and through subsidiaries, owns and operates 56 manufacturing plants in twenty countries. TK Holdings manufactures airbags in the United States, including airbags at issue in this litigation. TK Holdings delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States and the State of Florida.

31.     Defendants Takata and TK Holdings are collectively referred to as "Takata" or the "Takata Defendants." Takata is the manufacturer of all the defective airbags that are the subject of this Complaint.

II.     **Mercedes-Benz Defendants**

32.     Defendant Mercedes-Benz USA, LLC is a Delaware limited liability corporation whose principal place of business is 303 Perimeter Center North, Suite 202, Atlanta, Georgia, 30346. Until approximately July 2015, Mercedes' principal place of business was 1 Mercedes Drive, Montvale, New Jersey 07645. Mercedes' Customer Service Center is at 3 Mercedes Drive, Montvale, New Jersey 07645, and it operates a Learning and Performance Center at the same location. Mercedes operates a regional sales office at Morris Corporate Center 3, Bldg. D, 400 Interpace Parkway, Parsippany, New Jersey 07054, and has a parts distribution center at 100 New Canton Way, Robbinsville, New Jersey 08691. Mercedes' registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

33.     Mercedes-Benz, through its various entities, designs, manufacturers, markets, distributes, and sell Mercedes automobiles in New Jersey, Iowa, Florida, and multiple other locations in the United States and worldwide.  Mercedes-Benz and/or its agents designed, manufactured, approved and installed of all the defective airbags that are the subject of this Complaint.

34.     Defendant Daimler Aktiengesellschaft ("Daimler AG") is a foreign corporation headquartered in Stuttgart, Baden-Württemberg, Germany.

35.     Daimler AG is engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including vehicles installed with the defective airbags that are the subject of this Complaint, in the United States.

36.     Daimler AG designed, engineered, manufactured, tested, marketed, and exported vehicles to the United States with knowledge and understanding that they would be sold throughout the United States.

III.     **Plaintiffs**

   A.     **Plaintiff Branko Krmpotic**

37.     Plaintiff Krmpotic resides in North Bergen, New Jersey. Plaintiff owns a 2012 Mercedes-Benz C300, which was purchased certified pre-owned in January 2015 from a Mercedes-Benz dealership in Paramus, New Jersey.  Plaintiff's C300 was covered by a written warranty. To Plaintiff's knowledge, the airbags in his 2012 C300 have never been repaired or replaced. The value of his 2012 C300 has been diminished as a result of the Inflator Defect. Plaintiff would not have purchased his 2012 C300 or would not have paid as much for it if he had known of the problems associated with the vehicle's Inflator Defect.

38.     Plaintiff purchased his Class Vehicle primarily for personal, family, and household use.  After receiving the recall letter in or about February 2017, Plaintiff contacted Mercedes about the timing of the airbag replacement and was told that there was no current plan to begin installing replacement airbags and that no other information was available regarding the timing or availability of replacement airbags.

39.     As a result of Defendants' conduct, Plaintiff and the proposed Class were harmed and suffered actual damages. The defective Takata airbags significantly diminish the value of the

vehicles in which they are installed. Such vehicles have been stigmatized as a result of being recalled and equipped with Takata airbags, and the widespread publicity of the Inflator Defect.

40.     Further, Plaintiff and the proposed Class did not receive the benefit of their bargain; rather, they purchased and leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation. Plaintiff and the Class, either through a higher purchase price or higher lease payments, than they would have had the Inflator Defect been disclosed.  Plaintiff and the Class were deprived of having a safe, defect-free airbag installed in their vehicles, and Defendants unjustly benefited from their unconscionable delay in recalling their defective products, as they avoided incurring the costs associated with recalls and installing replacement parts for many years.

41.     Plaintiff and the proposed Class also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, including but not limited to expenses and costs associated with taking time off from work, paying for rental cars or other transportation arrangements, and child care.

**B.     Plaintiff Susan Knapp**

42.     Plaintiff Knapp resides in Van Meter, Iowa. Plaintiff owns a 2011 Mercedes-Benz E550, which was purchased new in June 2011 from a Mercedes-Benz dealership in Des Moines, Iowa.  Plaintiff's E550 was covered by a written warranty. To Plaintiff's knowledge, the airbags in her 2011 E550 have never been repaired or replaced. The value of her 2011 E550 has been diminished as a result of the Inflator Defect.  Plaintiff would not have purchased her 2011 E550 or would not have paid as much for it if she had known of the problems associated with the vehicle's Inflator Defect.

43.     Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.   After receiving the recall letter in or about June 2016, Plaintiff contacted Mercedes about the timing of the airbag replacement and was told that there was no current plan to begin installing replacement airbags and that no other information was available regarding the timing or availability of replacement airbags.

44.     As a result of Defendants' conduct, Plaintiff and the proposed Class were harmed and suffered actual damages. The defective Takata airbags significantly diminish the value of the vehicles in which they are installed. Such vehicles have been stigmatized as a result of being recalled and equipped with Takata airbags, and the widespread publicity of the Inflator Defect.

45.     Further, Plaintiff and the proposed Class did not receive the benefit of their bargain; rather, they purchased and leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation. Plaintiff and the Class, either through a higher purchase price or higher lease payments, than they would have had the Inflator Defect been disclosed.   Plaintiff and the Class were deprived of having a safe, defect-free airbag installed in their vehicles, and Defendants unjustly benefited from their unconscionable delay in recalling their defective products, as they avoided incurring the costs associated with recalls and installing replacement parts for many years.

46.     Plaintiff and the proposed Class also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, including but not limited to expenses and costs associated with taking time off from work, paying for rental cars or other transportation arrangements, and child care.

47.     The defective Takata airbags create a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury to all identified Plaintiffs below and the proposed Class.

## GENERAL FACTUAL ALLEGATIONS

48.     Plaintiffs bring this action on behalf of themselves and all persons similarly situated who purchased or leased Class Vehicles (defined below). Plaintiffs seek redress individually and on behalf of those similarly situated for economic losses stemming from Defendants' manufacture or use of Defective Airbags in the Class Vehicles, including but not limited to diminished value. Plaintiffs, on behalf of themselves and those similarly situated, seek to recover damages and statutory penalties, and injunctive relief/equitable relief.

49.     "Defective Airbags" refers to all airbag modules (including inflators) manufactured by Takata ("Takata airbags") that were installed in the Class Vehicles. As a result of the Inflator Defect, Defective Airbags have an unreasonably dangerous tendency to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether.

50.     "Class Vehicles" refers to all Mercedes-Benz vehicles purchased or leased in the United States that have Defective Airbags.

51.     Notwithstanding recalls and notices by other manufacturers and their awareness of the risks and/or dangers presented by ammonium nitrate dependent inflators, the Mercedes-Benz Defendants buried their heads, claiming they did not become aware of the issues requiring the recalls of the Class Vehicles until January 25, 2016, when Takata submitted a "Defect Information Report" to NHTSA reporting a potential safety defect for SDI and PSDI-5 driver-

side airbag inflators.  This assertion by the Mercedes-Benz Defendants is false and reflects their internal efforts to delay the safety recall and conceal from their customers the need for a recall.

52.     The vehicles Manufactured and sold by the Mercedes-Benz Defendants related to this DIR, which were recalled on February 11, 2016, are as follows:

**Driver-Side Airbags – Affected Models**

| ML320 Diesel | 2009-2010 |
|---|---|
| ML350 | 2009-2011 |
| ML450 Hybrid | 2010-2011 |
| ML550 | 2009-2011 |
| AMG ML63 | 2009-2011 |
| GL320 Diesel | 2009-2010 |
| GL350 Diesel | 2011-2012 |
| GL450 | 2009-2012 |
| GL550 | 2009-2012 |
| R 320 Diesel | 2009-2010 |
| R350 | 2009-2012 |
| SLK280 | 2007-2008 |
| SLK350 | 2007-2008 |
| AMG SLK55 | 2007-2008 |
| GLK350 | 2010-2012 |
| SLS | 2011-2014 |
| E350 | 2010-2011 |
| E550 | 2010-2011 |

14

| AMG E63 | 2010-2011 |
|---------|-----------|
| C230 | 2005-2007 |
| C300 | 2008-2011 |
| C320 | 2005 |
| C350 | 2006-2011 |
| AMG C63 | 2009-2011 |

53.     On May 16, 2016, Takata submitted an additional "Defect Information Report" to NHTSA that included PSPI-2 passenger-side airbag inflators. The vehicles Manufactured and sold by the Mercedes-Benz Defendants related to this DIR, which were recalled on March 26, 2016 are as follows:

**Passenger-Side Airbags – Affected Models[2]**

| GLK350 | 2010-2011 |
|--------|-----------|
| GLK350 4MATIC | 2010-2011 |
| SLS | 2011 |
| E350 Coupe | 2010-2011 |
| E550 Coupe | 2010-2011 |
| E350 Cabriolet | 2011 |

54.     More than 1,044,602 Mercedes-Benz vehicles have officially been recalled as part of the massive action arising from the installation of the Defective Airbags.

---

[2] All vehicles with affected passenger-side airbags also have affected driver-side airbags.

15

55.    In addition, 2007-2014 Sprinter vans with Dodge, Freightliner, or Mercedes badges also are included. Some 2006-2008 Sprinters were added to the Takata recall in June 2015.

56.    Further, even after the recalls, the Mercedes-Benz Defendants continued to sell vehicles that were equipped with defective Takata airbags, including the 2016-2017 E-Class Coupe/Convertible.  While these vehicles were not under recall yet, they were equipped with defective Takata airbags and will be recalled at some point in the future, likely by 2018.

57.    The recalls that have been issued by the Mercedes-Benz Defendants to replace the Defective Airbags have been largely ineffective. According to reporting from Consumer Reports, "there's reason for alarm about the pace of the repairs. Mercedes-Benz has repaired fewer than 1 percent of its affected vehicles, according to NHTSA."[3]

58.    To make matters worse for consumers, despite the dangers posed by the Defective Airbags, the Mercedes-Benz Defendants are not offering loaner vehicles and believe that "there is no reason to offer a loaner vehicle."

## I.    Takata is a Major Manufacturer of Airbags and Inflators.

59.    Defendant Takata is the world's second largest manufacturer of automotive safety devices, including airbags.  Takata was one of the first companies to market driver-side airbags in the early 1980s. Airbags made up 38.2 percent of its business in its most recently reported quarter.

60.    Takata has supplied airbags to automakers for U.S. vehicles and to state and local governmental purchasers since at least 1983. By 2014, Takata had captured 22 percent of the global automotive airbag market.

---

[3] http://www.consumerreports.org/airbags/whatishappeningwithtakataairbagrecall/

16

61.     Takata Corporation has claimed to prioritize driver safety as its "dream," "dedication," and "commitment."

62.     Takata claims to be "motivated by the preciousness of life" and pledges to "communicate openly and effectively."   Takata has failed to live up to these assurances by:

      a.     manufacturing, distributing, and selling airbags that can cause serious bodily injury or death;

      b.     intentionally concealing the foregoing from Plaintiffs, Class members, and federal regulators; and

      c.     making incomplete representations about the safety and reliability of its airbags, while purposefully withholding material facts from Plaintiffs, Class members, and federal regulators that contradicted these representations.

## II.     Takata's Airbags Have A Common, Uniform Defect

### A.     Takata Recklessly Chose An Inexpensive and Dangerous Propellant

63.     The part of the airbag at issue in this matter is the inflator. The inflator consists of a metal canister loaded with propellant wafers or pellets, and is placed in the airbag module. Upon impact, the propellant wafers or pellets ignite, triggering a chemical reaction that produces gas, which in turn inflates the fabric airbag.  This process occurs within milliseconds.

64.     The following basic illustration, included earlier in the complaint as well, depicts Takata's airbag module:

17



65.     When it began manufacturing airbags in the 1980s, Takata used a compound called sodium azide as the propellant within its inflators. In the mid-1990s, Takata began using a different propellant called 5-aminotetrazole, in part due to toxicity issues associated with sodium azide.

66.     In the late-1990's, Takata's managers pressured its engineers in Michigan to devise a lower cost propellant based upon ammonium nitrate, a compound used in fertilizer and explosives. Ammonium nitrate is a dangerous material that should not be used in airbags.  It is an inherently volatile and unstable chemical.

67.     Daily temperature swings are large enough for the ammonium nitrate to cycle through three of its five crystalline states, adding to its volatility. It also readily absorbs moisture from the atmosphere.   The chemical's sensitivity to temperature and moisture cause it to breakdown over time, which in turn results in violent detonation or the chemical becoming

18

effectively inert. As one explosives expert bluntly stated in The New York Times, ammonium nitrate "shouldn't be used in airbags," and is better suited to large demolitions in mining and construction.

68.    From the time it began investigating ammonium nitrate in the late 1990s, Takata understood these risks. Indeed, Takata expressed concern in a patent document in 1995 that an ammonium nitrate propellant would be vulnerable to temperature changes and that its casing "might even blow up." Takata further recognized that "[o]ne of the major problems with the use of ammonium nitrate is that it undergoes several crystalline phase changes," one of which occurs at approximately 90 degrees Fahrenheit. If ammonium nitrate undergoes this type of temperature change, the compound may "expand and contract and change shape resulting in growth and cracking" of the propellant, which might cause an airbag inflator to "not operate properly or might even blow up because of the excess pressure generated."

69.    Takata further admitted in a patent document from 1999 that pure ammonium nitrate is "problematic" because many gas generating compositions made with it are "thermally unstable."

70.    In 1999, as the ammonium nitrate design was being considered, Takata's engineering team in Moses Lake, Washington, raised objections and pointed to explosives manuals that warned of the risk of disintegration and irregular, overly-energetic combustion. As one former Takata engineer noted, "ammonium nitrate stuck out like a sore thumb," and yet his team was given only "a couple days" to do its review.

71.    Not surprisingly, other major airbag manufacturers, including Autoliv, Key Safety Systems, and TRW Automotive, have reportedly avoided using ammonium nitrate as a propellant. Indeed, Takata's representative confirmed at a Congressional hearing in June 2015

19

that Takata is the only major airbag manufacturer that uses ammonium nitrate as a primary propellant in its inflators.

72.     The only conceivable advantage to the compound for an airbag manufacturer, according to the expert quoted in The New York Times, is that it is "cheap, unbelievably cheap." Indeed, Takata had originally planned to use tetrazole as its propellant, which is not only more stable than ammonium nitrate, but also yields other desired benefits, such as being more environmentally friendly. But tetrazole was too expensive for Takata, and executives ultimately pressured engineers in Michigan to develop a cheaper alternative.

73.     Takata began receiving complaints regarding the Inflator Defect shortly after introducing the redesigned airbag to the market, and those complaints continued to multiply over the years.  Nevertheless, rather than switch to the compound it knew would be safer, even if more expensive, Takata recklessly opted to try, over the course of many years, to stabilize a compound that resists stabilization.

74.     For example, in a 2006 patent application, Takata discussed the need to test the performance of ammonium nitrate at various extreme temperatures because it is an unstable chemical, and these tests could reveal many problems, including "over-pressurization of the inflator leading to rupture." The 2006 patent document purportedly contained a fix for that sort of rupturing.

75.     Notably, the alleged fix in 2006 came after a rupture incident in 2004 that caused an injury, and incidents continued to mount after that time as well. Takata submitted a patent application with other purported "fixes" as recently as 2013. These ongoing, albeit unsuccessful, efforts show that Takata knew throughout the relevant period that its airbags were defective.

76.     Over the past 14 years that Defendants have known there was a problem with the safety of their airbags, there have been at least eleven deaths and 180 injuries linked to defective Takata airbags.  The incidents of Takata airbag ruptures date back to at least 2003.

**B.      The Mercedes-Benz Defendants Were Fully Informed Regarding the Use of Ammonium Nitrate**

77.     The Mercedes-Benz Defendants did not issue their first Takata-related recall until early 2016 notwithstanding the mountain of public information available regarding the dangers associated with Takata Airbags and despite their own internal discussions regarding these dangers with Takata.

78.      For example, high level personnel at Daimler AG participated in quarterly management meetings with representatives from Takata where information regarding airbag engineering, ballistic test results, and certain ruptures and anomalies were discussed.

79.     Also discussed at these meetings between the Mercedes-Benz Defendants and representatives from Takata were vehicle temperature studies showing that moisture would become problematic for the main propellant well within the useful life of the Class Vehicles, which for Mercedes is thirty years.

80.     Indeed, unlike some other automobile manufacturers who relied on Takata for its expertise in airbag design and manufacturing, the Mercedes-Benz Defendants have their own airbag expert who was well-informed about the use of ammonium nitrate, including all technical details of phase stabilized ammonium nitrate inflators.

**III.      The Mercedes-Benz Defendants Sold Their Vehicles As "Safe" and "Reliable"**

81.     At all relevant times, in advertisements and promotional materials, the Mercedes-Benz Defendants continuously maintained that their vehicles were safe and reliable.

82. Examples of the Mercedes-Benz Defendants' safety and reliability representations, from 2000 through the present, include the following:

- In a May 15, 2013 Mercedes press release on the Mercedes website, Dr. Dieter Zetsche, Chairman of the Board of Management of Daimler AG and Head of Mercedes-Benz Cars said: "Rather than being about safety or aesthetics, power or efficiency, comfort or dynamism, our aspirations were 'the best or nothing' in every respect. No other car stands for the Mercedes-Benz brand promise more than the S-Class."

- In a June 18, 2014 Mercedes press release on the Mercedes website, Mercedes says: Hallmark Mercedes high level of safety- To make top-class safety available for everyone, the CLS-Class will in the future be fitted with a host of new assistance systems along with existing systems with upgraded functionality.

- In a March 22, 2016 Mercedes press release on the Mercedes website, Mercedes says about its Coupe: In keeping with the Mercedes-Benz tradition, the body forms the foundation for exemplary crash safety. A high-strength safety passenger compartment forms the core of this concept. It is surrounded by specially designed and crash-tested deformation zones, which ensure the best possible occupant safety. In addition to 3-point safety belts with pyrotechnical and reversible belt tensioning and belt-force limitation for driver, front passenger and those in the outer rear seats, numerous airbags serve to protect the vehicle's occupants in an accident. These include combined thorax/pelvis sidebags

22

for driver and front passenger and an optimized windowbag extending over both seat rows, optional sidebags for the outer rear seats and a driver kneebag.

- In a September 1, 2015 press release on the Mercedes website, Prof. Dr. Thomas Weber, Member of the Daimler Board of Management responsible for Group Research and Head of Mercedes-Benz says, "The S-Class sets the pace on the global market when it comes to safety, efficiency and comfort."

## IV.   Defendants' Inadequate Recalls and Failure to Assist Impacted Consumers

### A.   Slow and Inadequate Recalls

83.   It is expected that more than 42 million cars will be recalled in the United States.

84.   At a Congressional hearing in June 2015, Takata's representative testified that Takata expected to increase production to 1 million replacement inflators per month by September 2015—well short of the number required to supply the automakers that have issued recalls.

85.   At the current rate, it will take several more years to produce enough Takata inflators to fix all recalled vehicles in the U.S., even setting aside the question of whether service departments would be able to provide the necessary services in a timely manner.

86.   Not surprisingly, authorized dealers are experiencing a severe shortage of parts to replace the faulty airbags.  In the case of Mercedes, however, owners of affected vehicles have not even been provided a timetable as to when they can expect to receive a replacement airbag.

87.   Congress has voiced concerns about this serious problem. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), said they were "alarmed and astonished that NHTSA has endorsed a policy recently announced by

Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the front seat if replacement parts for these airbags are unavailable. As a matter of policy, this step is extraordinarily troubling and potentially dangerous. As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (49 U.S.C.) prohibits a manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption. We are unaware of an exemption from your office in the case of Takata airbags."

88.     More recently, Senator Nelson identified the serious problem of repair rates, noting that more than 65% of the faulty airbags that Japanese airbag maker Takata has circulating in the U.S. have yet to be repaired.  And the rate is dangerously worse for Mercedes, with less than 2 percent of the faulty airbags being replaced.

### B.     Failure to Provide Replacement Vehicles

89.     The Class Vehicles are not safe to drive. They have been recalled, and yet replacement of the Defective Airbags could take years. Due to Defendants' failures, Plaintiffs and Class members are left with poor options: be without use of a vehicle; purchase, lease, or rent a new vehicle until the Mercedes-Benz Defendants complete the recall; or use a vehicle with a dangerous airbag over an extended period of time.

90.     As Senators Blumenthal and Markey asserted, "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."

91.     Mercedes-Benz Defendants are not providing loaner or replacement vehicles on a comprehensive basis.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

92.     Upon information and belief, Defendant Takata has known of the Inflator Defect in its Defective Airbags since at least 1990s. Prior to installing the Defective Airbags in their vehicles, the Mercedes-Benz Defendants knew or should have known of the Inflator Defect, because Takata informed them that the Defective Airbags contained the volatile and unstable ammonium nitrate. In addition, Defendants were again made aware of the Inflator Defect in the Takata airbags following a rupture incident in a Honda vehicle during 2004.  And the Defendants were again made aware of the Inflator Defect in Takata's airbags no later than 2008. Defendants have concealed from or failed to notify Plaintiffs, Class members, and the public of the full and complete nature of the Inflator Defect.

93.     Although Defendants have now acknowledged to safety regulators that Takata's airbags are defective, for years, Defendants did not fully investigate or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

94.     Any applicable statute of limitations has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### Estoppel

95.     Defendants were and are under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class Vehicles. They actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles. Plaintiffs and Class members reasonably relied upon Defendants' knowing and affirmative

misrepresentations and/or active concealment of these facts.  Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## Discovery Rule

96.     The causes of action alleged herein did not accrue until Plaintiffs and Class members discovered that their vehicles had the Defective Airbags.

97.     Plaintiffs and Class members, however, had no realistic ability to discern that the vehicles were defective until – at the earliest – after either the Defective Airbag exploded or their vehicles were recalled. And even then, Plaintiffs and Class members had no reason to discover their causes of action because of Defendants' active concealment of the true nature of the defect.

## CLASS ACTION ALLEGATIONS

98.     The Classes' claims all derive directly from a single course of conduct by Takata and the Mercedes-Benz Defendants.  This case is about the responsibility of Takata and the Mercedes-Benz Defendants, at law and in equity, for their knowledge, their conduct, and their products. Takata and the Mercedes-Benz Defendants have engaged in uniform and standardized conduct toward the Classes. They did not differentiate, in degree of care or candor, in their actions or inactions, or in the content of their statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the respective Classes, the same legal standards govern. Additionally, many states, and for some claims all states, share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes for some or all claims. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies

the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

## The Nationwide Consumer Class

99.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(2); and/or (b)(3); and/or c(4) of the Federal Rules of Civil Procedure on behalf of themselves and a Nationwide Consumer Class defined as follows:

> **All persons in the United States who, prior to the date on which the Class Vehicle was recalled, entered into a lease or bought a Class Vehicle, and who (i) still own or lease the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.**

## The State Consumer Classes

100.     Plaintiff Krmpotic alleges statewide class action claims on behalf of a class in New Jersey. This New Jersey State Consumer Class is initially defined as follows:

> **All persons who, prior to the date on which the Class Vehicle was recalled, entered into a lease or bought a Class Vehicle in the state of New Jersey, and who (i) still own or lease the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.**

101.     Plaintiff Knapp alleges statewide class action claims on behalf of a class in Iowa. This Iowa State Consumer Class is initially defined as follows:

> **All persons who, prior to the date on which the Class Vehicle was recalled, entered into a lease or bought a Class Vehicle in the state of Iowa, and who (i) still own or lease the Class Vehicle, or (ii) sold the Class Vehicle after the date on which the Class Vehicle was recalled, or (iii) following an accident, whose Class Vehicle was declared a total loss after the date on which the Class Vehicle was recalled.**

102.    The Nationwide Consumer Class and the New Jersey and Iowa Consumer Classes, and their members are sometimes referred to herein as the "Class" or "Classes."

103.    Excluded from each Class are Takata and the Mercedes-Benz Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Takata and the Mercedes-Benz Defendants; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

### Numerosity and Ascertainability

104.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). There are hundreds of thousands of Class Vehicles nationwide, and thousands of Class Vehicles in each of the States. Individual joinder of all Class members is impracticable.

105.    Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by Takata and the Mercedes-Benz Defendants or third parties in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

### Predominance of Common Issues

106.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that are the same for each of the respective Classes predominate over questions affecting only individual Class members. These include, without limitation, the following:

    a.      Whether the Class Vehicles suffer from the Inflator Defect;

28

b.      Whether the Class Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the airbags at issue;

c.      Whether Defendants knew or should have known about the Inflator Defect, and, if so, how long Defendants have known of the defect;

d.      Whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Defective Vehicle;

e.      Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

f.      Whether Defendants omitted and failed to disclose material facts about the Class Vehicles;

g.      Whether Defendants' concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class members to act to their detriment by purchasing the Class Vehicles;

h.      Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppels;

i.      Whether Defendants misrepresented that the Class Vehicles were safe;

j.      Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Class Vehicles were designed, manufactured, and sold with defective airbag inflators;

k.      Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

29

l.      Whether Defendants' statements, concealments and omissions regarding the Class Vehicles were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

m.      Whether Defendants violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

n.      Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

o.      Whether Plaintiffs and the Classes are entitled to a declaratory judgment stating that the airbag inflators in the Class Vehicles are defective and/or not merchantable;

p.      Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiff and the Classes;

q.      Whether Defendants have been unjustly enriched by their conduct;

r.      Whether Plaintiffs and the Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

s.      Whether Defendants should be declared responsible for notifying all Class members of the Inflator Defect and ensuring that all vehicles with the airbag inflator defect are promptly recalled and repaired;

t.      What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy;

u.      How such penalties should be most equitably distributed among Class members;

v.      Whether certain Defendants conspired together to violate RICO; and

30

w.      Whether certain Defendants associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

**Typicality**

107.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of other Class members, and arise from the same course of conduct by Takata and the Mercedes-Benz Defendants. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**Adequate Representation**

108.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

109.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

**Superiority**

110.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants Takata and the Mercedes-Benz Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

111.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this

31

controversy. The common questions of law and of fact regarding Takata and the Mercedes-Benz Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

112.    Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

113.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

114.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide, statewide and/or multistate classes for claims

sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

115.    The Classes expressly disclaim any recovery in this action for physical injury resulting from the Inflator Defect without waiving or dismissing such claims. Plaintiffs are informed and believe that injuries suffered in crashes as a result of Defective Airbags implicate the Class Vehicles, constitute evidence supporting various claims, including diminution of value, and are continuing to occur because of Defendants' delays and inaction regarding the commencement and completion of recalls, and because of the installation of Defective Airbags as replacement airbags. The increased risk of injury from the Inflator Defect serves as an independent justification for the relief sought by Plaintiffs and the Classes.

## REALLEGATION AND INCORPORATION BY REFERENCE

116.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs and allegations of this Complaint, as though fully set forth in each of the following Claims for Relief asserted on behalf of the Nationwide Class and the State Classes.

## CLAIMS FOR RELIEF

### A.    Federal Claim Against All Defendants

## COUNT 1
### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

117.    Plaintiffs bring this Count against the Takata Defendants and the Mercedes-Benz Defendants on behalf of members of the State Consumer Classes who are residents New Jersey and Iowa.

118.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

119.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

120.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).   They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

121.    The Takata Defendants and Mercedes-Benz Defendants are each a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

122.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

123.    The Takata Defendants and Mercedes-Benz Defendants provided Plaintiffs and the other members of the Classes with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, the Takata Defendants and Vehicle Manufacturing Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

124.    The Takata Defendants and Mercedes-Benz Defendants breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the other members of the Classes pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common design defect in that they are equipped with Defective Airbags containing the Inflator Defect. The Takata Defendants and Mercedes-Benz Defendants have

admitted that the Class Vehicles are defective in issuing its recalls, but the recalls are woefully insufficient to address the Inflator Defect.

125.   Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

126.   Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between the Takata Defendants and Vehicle Manufacturer Defendants, on the one hand, and Plaintiffs and the other members of the Classes, on the other.

127.   Any limitations on the warranties are substantively unconscionable. The Takata Defendants and Mercedes-Benz Defendants knew that the Class Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired. The Takata Defendants and Mercedes-Benz Defendants failed to disclose the Inflator Defect to Plaintiffs and the other members of the Classes. Thus, the Takata Defendants and Mercedes-Benz Defendants' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

128.   Plaintiffs and each of the other members of the Classes have had sufficient direct dealings with either the Mercedes-Benz Defendants or its agents (dealerships) to establish privity of contract.

129.   Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between the Takata Defendants and Mercedes-Benz Defendants, and between the Mercedes-Benz Defendants and their dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to

benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defect.

130.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Takata Defendants or Mercedes-Benz Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

131.     Furthermore, affording the Takata Defendants and Mercedes-Benz Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, the Takata Defendants and Mercedes-Benz Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford the Takata Defendants and Mercedes-Benz Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

132.     Plaintiffs and the other members of the Classes would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because the Takata Defendants and Mercedes-Benz Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other members of the Classes have not re-accepted their Defective Vehicles by retaining them.

133.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of

interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other members of the Classes, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other members of the Classes are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other members of the Classes in connection with the commencement and prosecution of this action.

134.    Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the Inflator Defect in their vehicles. Such expenses and losses will continue as Plaintiffs and the other members of the Classes must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in going through the recall process.

135.    The right of the other members of the Classes to recover these expenses as an equitable matter to put them in the place they would have been but for the Takata Defendant's and Mercedes-Benz Defendants' conduct presents common questions of law. Equity and fairness requires the establishment by Court decree and administration under Court supervision of a program funded by the Takata Defendants and Mercedes-Benz Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

**B.**    **State and Common Law Claims Against the Takata Defendants**

## COUNT 2
## Fraudulent Concealment

136.    Plaintiffs bring this claim against the Takata Defendants on behalf of the Nationwide Consumer Class under the common law of fraudulent concealment, as there are no

true conflicts (case-dispositive differences) among various states' laws of fraudulent concealment. In the alternative, Plaintiffs bring this claim on behalf of the Nationwide Consumer Class under Michigan law, because Michigan has the most significant relationship to the issues and facts relevant to this claim. In the alternative, Plaintiffs bring this claim on behalf of the respective State Consumer Classes under the laws of the states where Plaintiffs reside and/or purchased their Class Vehicles.

137.    Takata concealed and suppressed material facts regarding the Defective Airbags—most importantly, the Inflator Defect, which causes, among other things, the Defective Airbags to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether.

138.    Takata took steps to ensure that its employees did not reveal the known safety Inflator Defect to regulators or consumers.

139.    On information and belief, Takata still has not made full and adequate disclosure, continues to defraud Plaintiffs and the other members of the respective Classes, and continues to conceal material information regarding the Inflator Defect that exists in the Defective Airbags.

140.    Takata had a duty to disclose the Inflator Defect because it:

        a.    Had exclusive and/or far superior knowledge and access to the facts than Plaintiffs and the other members of the Classes, and Takata knew the facts were not known to or reasonably discoverable by Plaintiffs and the other members of the Classes;

        b.    Intentionally concealed the foregoing from Plaintiffs; and

c.      Made incomplete representations about the safety and reliability of the Defective Airbags and, by extension, the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

141.    These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and the other members of the Classes. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Plaintiffs and the other members of the Classes trusted Defendants not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

142.    Takata concealed and suppressed these material facts to falsely assure purchasers and consumers that its airbags were capable of performing safely, as represented by Takata and reasonably expected by consumers.

143.    Takata actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and to avoid recalls that would hurt the brand's image and cost Takata money.  Takata concealed these facts at the expense of Plaintiffs and the other members of the Classes.

144.    Plaintiffs and the other members of the Classes were unaware of these omitted material facts, and would not have acted as they did if they had known of the concealed and/or suppressed facts.

145.    Had they been aware of the Defective Airbags and Takata's callous disregard for safety, Plaintiffs and the other members of the Classes either would have paid less for their Class

Vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of Takata's fraudulent concealment.

146.    Because of the concealment and/or suppression of the facts, Plaintiffs and the other members of the Classes sustained damage because they own vehicles that diminished in value as a result of Takata's concealment of, and failure to timely disclose, the serious Inflator Defect in millions of Class Vehicles and the serious safety and quality issues caused by Takata's conduct.

147.    The value of all Class members' vehicles has diminished as a result of Takata's fraudulent concealment of the Defective Airbags and made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

148.    Accordingly, Takata is liable to the Class for their damages in an amount to be proven at trial.

149.    Takata's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the other members of the Classes' rights and well-being, and with the aim of enriching Takata. Takata's conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT 3
### Breach of Implied Warranty of Merchantability, N.J.S.A. § 12A:2-314

150.    Plaintiff Krmpotic brings this Claim against the Takata Defendants on behalf of the New Jersey State Consumer Class under New Jersey Law.

40

151. Takata is a merchant with respect to motor vehicles within the meaning of New Jersey law.

152. Under applicable law, a warranty that the Defective Airbags, and by extension, the Class Vehicles, were in merchantable condition was implied by law in the transactions when Plaintiff and Class Members purchased their Class Vehicles.

153. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used, because they are fitted with Defective Airbags containing the Inflator Defect, leading to an unreasonable likelihood of serious bodily injury and death.

154. Takata was provided notice of the airbag problems through numerous complaints filed against it, internal investigations, and by many individual letters and communications sent by Plaintiff and the Class before or within a reasonable amount of time after Takata and the other Defendants issued the recalls and the allegations of the Inflator Defect became public. Moreover, Takata and the other defendants were aware of these problems long before Plaintiff and the Class and had ample notice and opportunity to correct them.

155. As a direct and proximate result of Takata's breach of the implied warranty of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

**COUNT 4**
**Breach of Implied Warranty of Merchantability, I.C.A § 554.2314**

156. Plaintiff Knapp brings this claim on behalf of the Iowa State Consumer Class against the Takata Defendants.

157. Takata is a merchant with respect to motor vehicles.

158.     When Plaintiff and the Iowa State Consumer Class purchased or leased their Class Vehicles, the transaction contained an implied warranty that the Class Vehicles were in merchantable condition.

159.     At the time of sale and all times thereafter, the Class Vehicles were not merchantable and not fit for the ordinary purpose for which cars and airbags are used. Specifically, the Class Vehicles are inherently defective in that they are equipped with Defective Airbags with the Inflator Defect which causes, among other things, the Defective Airbags to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether.

160.     On information and belief, the Takata Defendants had notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by numerous individual letters and communications sent by the consumers before or within a reasonable amount of time after Takata issued the recalls and the allegations of the Inflator Defect became public.

161.     As a direct and proximate result of the Takata Defendants' breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT 5
## Violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, et seq.

162.     Plaintiff Krmpotic brings this claim on behalf of the New Jersey State Consumer Class against the Takata Defendants.

163.     Plaintiff, the Class, and Defendants are or were "persons" within the meaning of N.J.S.A. § 56:8-1(d).

164.    The Takata Defendants engaged in "sales" of "merchandise" within the meaning of N.J.S.A. § 56:8-1(c), (d).

165.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…." N.J.S.A. § 56:8-2. The Takata Defendants engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class members rely upon their acts, concealment, suppression or omissions.

166.    In the course of their business, the Takata Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

167.    The Takata Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

43

168.    Defendant Takata has known of the Inflator Defect in the Defective Airbags since at least the 1990s. The Takata Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

169.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, the Takata and Honda Defendants engaged in unfair or deceptive business practices in violation of the New Jersey CFA. The Takata Defendants deliberately withheld the information about the propensity of the Defective Airbags violently exploding and/or expelling vehicle occupants with lethal amounts of metal debris and shrapnel and/or failing to deploy altogether, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

170.    In the course of the Takata Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. The Takata Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

171.    The Takata Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of the Takata Defendants' brands, and the true value of the Class Vehicles.

44

172.     The Takata Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with an intent to mislead Plaintiff and the New Jersey Consumer Sub-Class.

173.     The Takata Defendants knew or should have known that their conduct violated the New Jersey CFA.

174.     As alleged above, the Takata Defendants made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.

175.     To protect their profits and to avoid remediation costs and a public relations nightmare, the Takata Defendants concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving these highly dangerous vehicles.

176.     The Takata Defendants owed Plaintiff a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because the Takata Defendants:

a.     Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.     Intentionally concealed the foregoing from Plaintiff; and/or

c.     Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff that contradicted these representations.

177.    Because the Takata Defendants fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by the Takata Defendants' conduct, they are now worth significantly less than they otherwise would be.

178.    The Takata Defendants' failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to Plaintiff and the New Jersey State Consumer Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals the Inflator Defect rather than promptly remedies them.

179.    Plaintiff and the Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and Defendants' complete disregard for safety, Plaintiff either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff did not receive the benefit of their bargain as a result of Defendants' misconduct.

180.    The Takata Defendants' violations present a continuing risk to Plaintiff, the Class, as well as to the general public. The Takata Defendants' unlawful acts and practices complained of herein affect the public interest.

181.    As a direct and proximate result of the Takata Defendants' violations of the New Jersey CFA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage.

182.    Plaintiff and the Class are entitled to recover legal and/or equitable relief including an order enjoining the Takata Defendants' unlawful conduct, treble damages, costs and

46

reasonable attorneys' fees pursuant to N.J.S.A. § 56:8-19, and any other just and appropriate relief.

### COUNT 6
### Violation of the Private Right of Action for Consumer Frauds Act
### Iowa Code § 714H.1, et seq.

183.    This Claim is brought by Plaintiff Knapp on behalf of herself and the Iowa State Consumer Class against Takata Defendants.

184.    The Takata Defendants are "persons" under Iowa Code § 714H.2(7).

185.    The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."  Iowa Code § 714H.3.  Takata participated in misleading, false, or deceptive acts that violated the Iowa CFA.

186.    By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, Takata engaged in deceptive business practices prohibited by the Iowa CFA.

187.    Takata's actions as set forth above occurred in the conduct of trade or commerce.

188.    In the course of its business, Takata failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or a capacity to deceive. Takata also engaged in the unlawful trade practices by employing deception, deceptive acts or

practices, fraud, misrepresentation, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

189.    The Takata Defendants have known of the Inflator Defect in its Defective Airbags since at least the 1990s.

190.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and presenting themselves as reputable manufacturers that value safety, Takata engaged in unfair or deceptive business practices in violation of the Iowa CFA.   Takata deliberately withheld the information about the propensity of the Defective Airbags violently exploding and/or expelling vehicle occupants with lethal amounts of metal debris and shrapnel, and/or fail to deploy, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

191.    In the course of Takata's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the Inflator Defect discussed above.   Takata compounded the deception by repeatedly asserting that the Defective Airbags installed in the Class Vehicles were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

192.    Takata's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of Class Vehicles and/or the

Defective Airbags installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

193.    Takata intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with intent to mislead Plaintiff and the Iowa State Consumer Class.

194.    Takata knew or should have known that its conduct violated the Iowa CFA.

195.    As alleged above, Takata made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.

196.    To protect their profits and to avoid remediation costs and a public relations nightmare, the Takata Defendants concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

197.    The Takata Defendants owed Plaintiff a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because the Takata Defendants:

a.      Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.      Intentionally concealed the foregoing from Plaintiff; and/or

c.      Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

198.    Because the Takata Defendants fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.   In light of the stigma attached to Class Vehicles by the Takata Defendants' conduct, they are now worth significantly less than they otherwise would be.

199.    The Takata Defendants' failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to Plaintiff and the Iowa State Consumer Class.   A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

200.    Plaintiff and the Iowa State Consumer Class suffered ascertainable loss caused by the Takata Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and Defendants' complete disregard for safety, Plaintiff either would have paid less for her vehicle or would not have purchased or leased them at all. Plaintiff did not receive the benefit of her bargain as a result of Defendants' misconduct.

201.    The Takata Defendants' violations present a continuing risk to Plaintiff, the Iowa State Consumer Class, as well as to the general public.   The Takata Defendants' unlawful acts and practices complained of herein affect the public interest.

202.    As a direct and proximate result of the Takata Defendants' violation of the Iowa CFA, Plaintiff and the Iowa State Consumer Class have suffered injury-in-fact and/or actual damage.

203.    Pursuant to Iowa Code § 714H.5, Plaintiff and the Iowa State Consumer Class seek to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Iowa CFA; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under the Iowa CFA.

## COUNT 7
## Negligence

204.    Plaintiffs bring this claim against the Takata Defendants on behalf of the Nationwide Consumer Class under New Jersey law, because New Jersey has the most significant relationship to the issues and facts relevant to this claim. In the alternative, Plaintiffs bring this claim on behalf of the State Consumer Classes under the laws of the states where Plaintiffs reside and/or purchased their Class Vehicles.

205.    The Takata owed a duty of care to Plaintiffs, who were foreseeable end users, to design and manufacture their airbags so that they would not be defective or unreasonably dangerous to foreseeable end users, including Plaintiffs.

206.    The Takata Defendants breached their duty of care by, among other things:

a.      Negligently and recklessly failing to take all necessary steps to ensure that its products-which literally can make the difference between life and death in an accident-function as designed, specified, promised, and intended;

b.      Negligently and recklessly failing to take all necessary steps to ensure that the Defective Airbags did not suffer from a common, uniform defect: the use of ammonium nitrate, a notoriously volatile and unstable compound, as the propellant in their inflators; and

c.      Negligently and recklessly concealing the nature and scope of the Inflator Defect;

d.     Negligently and recklessly delaying the replacement of the Defective Airbags with a safe alternative; and

e.     Negligently and recklessly failing to provide safe alternative vehicles to Plaintiffs and the other members of the Classes during the interim period before a replacement airbag is available and installed in the Class Vehicles.

207.    The Takata Defendants' negligence was the direct, actual, and proximate cause of foreseeable damages suffered by Plaintiffs, as well as ongoing foreseeable damages that Plaintiffs continue to suffer to this day.

208.    As a direct, actual, and proximate result of the Takata Defendants' misconduct, Plaintiffs and the other members of the Classes were harmed and suffered actual damages, which are continuing in nature, including:

a.     the significantly diminished value of the vehicles in which the defective and unreasonably dangerous airbags are installed; and

b.     the continued exposure of Plaintiffs to an unreasonably dangerous condition that gives rise to a clear and present danger of death or personal injury.

209.    In addition to damages, Plaintiffs seek injunctive relief to enjoin the Takata Defendants from continuing their negligence by using the same dangerous chemical in the replacement airbags.

C.     **Common Law and State Claims Against The Mercedes- Benz Defendants**

**COUNT 8**
**Fraudulent Concealment**

210.    Plaintiffs bring this claim on behalf of the Nationwide Consumer Class against the Mercedes-Benz Defendants under the common law of fraudulent concealment, as there are no true conflicts (case-dispositive differences) among various states' laws of fraudulent

concealment.   In the alternative, Plaintiffs bring this claim on behalf of the Nationwide Consumer Class under New Jersey law, because Mercedes-Benz's United States operations were headquartered in New Jersey during a significant portion of the class period and New Jersey has the most significant relationship to the issues and facts relevant to this claim.   In the alternative, Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Class Vehicles.

211.   Mercedes-Benz concealed and suppressed material facts regarding the Class Vehicles— most importantly, the fact that they were equipped with Defective Airbags which, among other things, (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether.

212.   Mercedes-Benz took steps to ensure that its employees did not reveal the known safety Inflator Defect to regulators or consumers.

213.   On information and belief, Mercedes-Benz has still not made full and adequate disclosure regarding the Inflator Defect that exists in the Class Vehicles, and continues to defraud and conceal material information from Plaintiffs and the Classes.

214.   Mercedes-Benz had a duty to disclose the Inflator Defect because it:

a.   Had exclusive and/or far superior knowledge and access to the facts, and Mercedes-Benz knew the facts were not known to or reasonably discoverable by Plaintiffs and the other members of the Classes;

b.   Intentionally concealed the foregoing from Plaintiffs; and/or

c.     Made incomplete representations about the safety and reliability of the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

215.   These omitted and concealed facts were material because they would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and the other members of the Classes. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer. Indeed, Plaintiffs and the other members of the Classes trusted Mercedes-Benz not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

216.   Mercedes-Benz concealed and suppressed these material facts in order to falsely assure purchasers and consumers that its vehicles were capable of performing safely as represented by Mercedes-Benz and reasonably expected by consumers.

217.   Mercedes-Benz actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost Mercedes-Benz money, and it did so at the expense of Plaintiffs and the other members of the Classes.

218.   Plaintiffs and the other members of the Classes were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.

219.   Because of the concealment and/or suppression of the facts, Plaintiffs and the other members of the Classes sustained damage because they own vehicles that diminished in

value as a result of Mercedes-Benz's concealment of, and failure to timely disclose, the Inflator Defect in millions of Class Vehicles and the serious safety and quality issues caused by Mercedes-Benz's conduct.

220.   Had they been aware of the Defective Airbags installed in their Class Vehicles, and the company's callous disregard for safety, Plaintiffs and the other members of the Classes either would have paid less for their Class Vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of Mercedes-Benz's fraudulent concealment.

221.   The value of all Class members' vehicles has diminished as a result of Mercedes-Benz's fraudulent concealment of the Defective Airbags and made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

222.   Accordingly, Mercedes-Benz is liable to the Class for their damages in an amount to be proven at trial.

223.   Mercedes-Benz's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the other members of the Classes' rights and well-being, and with the aim of enriching Mercedes-Benz.  Mercedes-Benz's conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT 9
## Breach of Implied Warranty of Merchantability, N.J.S.A. § 12A:2-314

224.    Plaintiff brings this claim on behalf of the New Jersey Consumer Class against the Mercedes-Benz Defendants under the laws of New Jersey, because New Jersey has the most significant relationship to the facts and issues relevant to this claim.

225.    Mercedes-Benz is a merchant with respect to motor vehicles.

226.    When Plaintiff and the Class purchased or leased their Class Vehicles, the transaction contained an implied warranty that the Class Vehicles were in merchantable condition.

227.    At the time of sale and all times thereafter, the Class Vehicles were not merchantable and not fit for the ordinary purpose for which cars and airbags are used. Specifically, the Class Vehicles are inherently defective in that they are equipped with Defective Airbags with the Inflator Defect which causes, among other things, the Defective Airbags to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether.

228.    On information and belief, Mercedes-Benz had notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by numerous individual letters and communications sent by the consumers before or within a reasonable amount of time after Mercedes-Benz issued the recalls and the allegations of the Inflator Defect became public.

229.    As a direct and proximate result of Mercedes-Benz's breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT 10
## Breach of Implied Warranty of Merchantability, I.C.A § 554.2314

230.    Plaintiff Knapp brings this claim on behalf of the Iowa State Consumer Class against the Mercedes-Benz Defendants.

231.    Mercedes-Benz is a merchant with respect to motor vehicles.

232.    When Plaintiff and the Class purchased or leased their Class Vehicles, the transaction contained an implied warranty that the Class Vehicles were in merchantable condition.

233.    At the time of sale and all times thereafter, the Class Vehicles were not merchantable and not fit for the ordinary purpose for which cars and airbags are used. Specifically, the Class Vehicles are inherently defective in that they are equipped with Defective Airbags with the Inflator Defect which causes, among other things, the Defective Airbags to: (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether.

234.    On information and belief, Mercedes-Benz had notice of these issues by its knowledge of the issues, by customer complaints, by numerous complaints filed against it and/or others, by internal investigations, and by numerous individual letters and communications sent by the consumers before or within a reasonable amount of time after Mercedes-Benz issued the recalls and the allegations of the Inflator Defect became public.

235.    As a direct and proximate result of Mercedes-Benz's breach of the warranties of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT 11
## Violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, et *seq.*

236.    Plaintiffs bring this claim on behalf of the Nationwide Consumer Class against the Mercedes-Benz Defendants because their United States Operations were headquartered in New Jersey for a significant portion of the class period and because New Jersey has the most significant relationship to the facts and issues relevant to this claim.  In the alternative, Plaintiff Krmpotic brings this claim on behalf of the New Jersey State Consumer Class against the Mercedes-Benz Defendants under the laws of New Jersey.

237.    Plaintiffs, the Nationwide Consumer Class, the New Jersey State Consumer Class and Defendants are or were "persons" within the meaning of N.J.S.A. § 56:8-1(d).

238.    The Mercedes-Benz Defendants engaged in "sales" of "merchandise" within the meaning of N.J.S.A. § 56:8-1(c), (d).

239.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…." N.J. Stat. Ann. § 56:8-2. The Mercedes-Benz Defendants engaged in unconscionable or deceptive acts or practices within the state of New Jersey that violated the New Jersey CFA as described above and below, and did so with the intent that all the other members of the proposed Classes rely upon their acts, concealment, suppression or omissions.

240.    In the course of their business, the Mercedes-Benz Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

241.    The Mercedes-Benz Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

242.    Prior to installing the Defective Airbags in their vehicles, the Mercedes-Benz Defendants knew or should have known of the Inflator Defect, because Takata informed them that the Defective Airbags contained the volatile and unstable ammonium nitrate and the Mercedes-Benz Defendants approved Takata's designs. Mercedes-Benz Defendants were again made aware of the Inflator Defect in Takata's airbags not later than 2008, when Honda first notified regulators of a problem with its Takata airbags. The Mercedes-Benz Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

243.    By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, the Mercedes-Benz Defendants engaged in unfair or deceptive business practices in violation of the New Jersey CFA. The Mercedes-Benz Defendants deliberately withheld the information about the propensity of the Defective Airbags violently exploding and/or expelling vehicle occupants

59

with lethal amounts of metal debris and shrapnel and/or failing to deploy altogether, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

244.    In the course of the Mercedes-Benz Defendants' business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. The Mercedes-Benz Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the Defective Airbags installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

245.    The Mercedes-Benz Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of the Mercedes-Benz Defendants' brands, and the true value of the Class Vehicles.

246.    The Mercedes-Benz Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with intent to mislead Plaintiffs and the other members of the Classes.

247.    The Mercedes-Benz Defendants knew or should have known that their conduct violated the New Jersey CFA.

248.    As alleged above, the Mercedes-Benz Defendants made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.

249.    These statements were either disseminated or approved through actions that took place in New Jersey.

250.    To protect their profits and to avoid remediation costs and a public relations nightmare, the Mercedes-Benz Defendants concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving these highly dangerous vehicles.

251.    The Mercedes-Benz Defendants owed Plaintiffs and the other members of the Classes a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because the Mercedes-Benz Defendants:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.    Intentionally concealed the foregoing from Plaintiffs; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

252.    Because the Mercedes-Benz Defendants fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by the Mercedes-Benz Defendants' conduct, they are now worth significantly less than they otherwise would be.

61

253.     The Mercedes-Benz Defendants' failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to Plaintiffs and the other members of the Classes. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals the Inflator Defect rather than promptly remedies them.

254.     Plaintiffs and the other members of the Classes suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and Defendants' complete disregard for safety, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs did not receive the benefit of their bargain as a result of Defendants' misconduct.

255.     The Mercedes-Benz Defendants' violations present a continuing risk to Plaintiffs, the other members of the Classes, as well as to the general public. The Mercedes-Benz Defendants' unlawful acts and practices complained of herein affect the public interest.

256.     As a direct and proximate result of the Mercedes-Benz Defendants' violations of the New Jersey CFA, Plaintiffs and the other members of the Classes have suffered injury-in-fact and/or actual damage.

257.     Plaintiffs and the other members of the Classes are entitled to recover legal and/or equitable relief including an order enjoining the Mercedes-Benz Defendants' unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J.S.A. § 56:8-19, and any other just and appropriate relief.

**COUNT 12**
**Violation of the Private Right of Action for Consumer Frauds Act Iowa Code**
**§ 714H.1, et seq.**

258.    Plaintiff Knapp brings this claim on behalf of the Iowa State Consumer Class against the Mercedes-Benz Defendants.

259.    The Mercedes-Benz Defendants are "persons" under Iowa Code § 714H.2(7).

260.    The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise."   Iowa Code § 714H.3.   The Mercedes-Benz Defendants participated in misleading, false, or deceptive acts that violated the Iowa CFA.

261.    By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them, the Mercedes-Benz Defendants engaged in deceptive business practices prohibited by the Iowa CFA.

262.    The Mercedes-Benz Defendants' actions as set forth above occurred in the conduct of trade or commerce.

263.    In the course of its business, the Mercedes-Benz Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them as described herein and otherwise engaged in activities with a tendency or a capacity to deceive. Mercedes-Benz Defendants also engaged in the unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentation, or concealment,

suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles and/or the Defective Airbags installed in them.

264.   The Mercedes-Benz Defendants have known of the Inflator Defect in its Defective Airbags since at least the 1990s.  Prior to installing the Defective Airbags in their vehicles, the Mercedes-Benz Defendants knew or should have known of the Inflator Defect, because Takata informed them that the Defective Airbags contained volatile and unstable ammonium nitrate and the Mercedes Defendants approved Takata's designs.  Mercedes-Benz Defendants were again made aware of the Inflator Defect in Takata's airbags not later than 2008, when Honda first notified regulators of a problem with its Takata airbags.  The Mercedez-Benz Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them.

265.   By failing to disclose and by actively concealing the Inflator Defect in the Class Vehicles and/or the Defective Airbags installed in them, by marketing them as safe, reliable, and of high quality, and presenting themselves as reputable manufacturers that value safety, the Mercedes-Benz Defendants engaged in unfair or deceptive business practices in violation of the Iowa CFA.   Mercedes-Benz Defendants deliberately withheld the information about the propensity of the Defective Airbags violently exploding and/or expelling vehicle occupants with lethal amounts of metal debris and shrapnel, and/or fail to deploy, instead of protecting vehicle occupants from bodily injury during accidents, in order to ensure that consumers would purchase the Class Vehicles.

266.   In the course of Mercedes-Benz's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the Inflator Defect discussed above.  Mercedes-

Benz compounded the deception by repeatedly asserting that the Defective Airbags installed in the Class Vehicles were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

267.    Mercedes-Benz Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of Class Vehicles and/or the Defective Airbags installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

268.    Mercedes-Benz Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Defective Airbags installed in them with intent to mislead Plaintiff and the Iowa State Consumer Class.

269.    Mercedes-Benz Defendants knew or should have known that its conduct violated the Iowa CFA.

270.    As alleged above, Mercedes-Benz Defendants made material statements about the safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them that were either false or misleading.

271.    To protect their profits and to avoid remediation costs and a public relations nightmare, the Mercedes-Benz Defendants concealed the dangers and risks posed by the Class Vehicles and/or the Defective Airbags installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

272.     The Mercedes-Benz Defendants owed Plaintiff a duty to disclose the true safety and reliability of the Class Vehicles and/or the Defective Airbags installed in them because the Mercedes-Benz Defendants:

d.     Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

e.     Intentionally concealed the foregoing from Plaintiff; and/or

f.     Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

273.     Because the Mercedes-Benz Defendants fraudulently concealed the Inflator Defect in Class Vehicles and/or the Defective Airbags installed in them, resulting in a raft of negative publicity once the Inflator Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished.   In light of the stigma attached to Class Vehicles by the Mercedes-Benz Defendants conduct, they are now worth significantly less than they otherwise would be.

274.     The Mercedes-Benz Defendants failure to disclose and active concealment of the dangers and risks posed by the Defective Airbags in Class Vehicles were material to Plaintiff and the Iowa State Consumer Class.   A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

275.     Plaintiff and the Iowa State Consumer Class suffered ascertainable loss caused by the Mercedes-Benz Defendants' misrepresentations and their failure to disclose material information.   Had they been aware of the Inflator Defect that existed in the Class Vehicles and/or the Defective Airbags installed in them, and Defendants' complete disregard for safety, Plaintiff

either would have paid less for her vehicle or would not have purchased or leased them at all. Plaintiff did not receive the benefit of her bargain as a result of Defendants' misconduct.

276.    The Mercedes-Benz Defendants' violations present a continuing risk to Plaintiff, the Iowa State Consumer Class, as well as to the general public.   The Mercedes-Benz Defendants' unlawful acts and practices complained of herein affect the public interest.

277.    As a direct and proximate result of the Mercedes-Benz Defendants' violation of the Iowa CFA, Plaintiff and the Iowa State Consumer Class have suffered injury-in-fact and/or actual damage.

278.    Pursuant to Iowa Code § 714H.5, Plaintiff and the Iowa State Consumer Class seek to recover actual damages in an amount to be determined at trial; treble damages for Defendants' knowing violations of the Iowa CFA; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under the Iowa CFA.

## COUNT 13
### Negligence

279.    Plaintiffs bring this claim against the Mercedes-Benz Defendants on behalf of the Nationwide Consumer Class under New Jersey law, because New Jersey has the most significant relationship to the issues and facts relevant to this claim. In the alternative, Plaintiffs bring this claim on behalf of the State Consumer Classes against the Mercedes-Benz Defendants under the laws of the states where Plaintiffs reside and/or where Plaintiffs purchased their Class Vehicles.

280.    The Mercedes-Benz Defendants owed a duty of care to Plaintiffs, who were a foreseeable end user, to design and manufacture their airbags so that they would not be defective or unreasonably dangerous to foreseeable end users, including Plaintiffs.

281.    The Mercedes-Benz Defendants breached their duty of care by, among other things:

a.    Negligently and recklessly failing to take all necessary steps to ensure that its products-which literally can make the difference between life and death in an accident-function as designed, specified, promised, and intended;

b.    Negligently and recklessly failing to take all necessary steps to ensure that the Defective Airbags did not suffer from a common, uniform defect: the use of ammonium nitrate, a notoriously volatile and unstable compound, as the propellant in their inflators; and

c.    Negligently and recklessly concealing the nature and scope of the Inflator Defect;

d.    Negligently and recklessly delaying the replacement of the Defective Airbags with a safe alternative; and

e.    Negligently and recklessly failing to provide safe alternative vehicles to Plaintiffs and the other members of the Classes during the interim period before a replacement airbag is available and installed in the Class Vehicles.

282.    The Mercedes-Benz Defendants' negligence was the direct, actual, and proximate cause of foreseeable damages suffered by Plaintiffs, as well as ongoing foreseeable damages that Plaintiffs continue to suffer to this day.

283.    As a direct, actual, and proximate result of the Mercedes-Benz Defendants' misconduct, Plaintiffs and the members of the proposed Classes were harmed and suffered actual damages, which are continuing in nature, including:

a.    the significantly diminished value of the vehicles in which the defective and unreasonably dangerous airbags are installed; and

b.      the continued exposure of Plaintiffs to an unreasonably dangerous condition that gives rise to a clear and present danger of death or personal injury.

284.      In addition to damages, Plaintiffs seek injunctive relief to enjoin the Mercedes-Benz Defendants from continuing its negligence by using the same dangerous chemical in the replacement airbags.

## COUNT 14
## Negligent Failure to Recall

285.      Plaintiffs bring this claim against the Mercedes-Benz Defendants on behalf of the Nationwide Consumer Class under New Jersey law, because New Jersey has the most significant relationship to the issues and facts relevant to this claim. In the alternative, Plaintiffs bring this claim on behalf of the State Consumer Classes against the Mercedes-Benz Defendants under the laws of the states where Plaintiffs reside and/or where Plaintiffs purchased their Class Vehicles.

286.      The Mercedes-Benz Defendants have an independent duty to issue a timely recall of Class Vehicles that Defendants knew or should have known posed a danger to the health and safety of Plaintiffs and the other members of the Classes due to the Defective Airbag condition.

287.      The Mercedes-Benz Defendants breached this duty by failing and unreasonably delaying to issue a recall even though they knew that the Class Vehicles contained Defective Airbags and that the risk of harm from the dangerous condition was concealed to Plaintiffs and other members of the Classes.

288.      Purchasers of the Class Vehicles, including Plaintiffs and the other members of the Classes were harmed by Defendants' failure to adequately recall all the Class Vehicles and/or the Defective Airbags installed in them in a timely manner and have suffered damages, including, without limitation, the diminished value of the Class Vehicles, and the cost of modification of the dangerous and life-threatening Defective Airbags.

289.     The Mercedes-Benz Defendants' failure to timely and adequately recall the Class Vehicles and/or the Defective Airbags installed in them was a substantial factor in causing the purchasers' harm, including that of Plaintiffs and the other members of the Classes.

## COUNT 15
## Unjust Enrichment

290.     Plaintiffs bring this claim on behalf of the Nationwide Consumer Class against the Mercedes-Benz Defendants under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among various states' laws of fraudulent concealment.  In the alternative, Plaintiffs brings this claim on behalf of the New Jersey State Consumer Class under New Jersey law against the Mercedes-Benz Defendants, because Mercedes-Benz's United States operations were headquartered in New Jersey for a significant portion of the class period and New Jersey has the most significant relationship to the issues and facts relevant to this claim.

291.     Mercedes-Benz has received and retained a benefit from the Plaintiffs and inequity has resulted.

292.     Mercedes-Benz benefitted through its unjust conduct, by selling Class Vehicles with a concealed safety-and-reliability related defect, at a profit, for more than these Vehicles were worth, to Plaintiffs, who overpaid for these Vehicles, and/or would not have purchased these Vehicles at all; and who have been forced to pay other costs.

293.     It is inequitable for Mercedes-Benz to retain these benefits.

294.     Plaintiffs do not have an adequate remedy at law.

295.     As a result of Mercedes-Benz's conduct, the amount of its unjust enrichment should be disgorged, in an amount to be proven at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

A.      An order certifying the proposed Classes, designating Plaintiffs as the named representatives of the Classes, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Fed. R. Civ. P. 23;

B.      A declaration that the airbags in Class Vehicles are defective;

C.      A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

D.      An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and such other injunctive relief that the Court deems just and proper;

E.      An award to Plaintiffs and Class Members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

F.      An award to Plaintiffs and Class Members for the return of the purchase prices of the Class Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorney fees;

G.      A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket and loss-of-use expenses and damages claims associated with the Defective Airbags in Plaintiffs' and Class Members' Class Vehicles, can be made and paid, such that Defendants, not the Class Members, absorb the losses and

expenses fairly traceable to the recall of the vehicles and correction of the Defective Airbags;

H.      A declaration that Defendants must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

I.      An award of attorneys' fees and costs, as allowed by law;

J.      An award of prejudgment and post judgment interest, as provided by law;

K.      Leave to amend this Complaint to conform to the evidence produced at trial; and

L.      Such other relief as may be appropriate under the circumstances.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

DATED: June 27, 2017

**CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC**

By: <u>/s/ James E. Cecchi</u>

**PODHURST ORSECK, P.A.**
Peter Prieto (FBN 501492)
Aaron S. Podhurst (FBN 63606)
Stephen F. Rosenthal (FBN 131458)
John Gravante (FBN 617113)
Matthew P. Weinshall (FBN 84783) 25
West Flagler Street, Suite 800
Miami, Florida 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com
apodhurst@podhurst.com

**LIEFF CABRASER HEIMANN AND BERNSTEIN LLP**
Elizabeth Cabraser
ecabraser@lchb.com
275 Battery St., Suite 3000
San Francisco, CA 94111-3339
T: 415-956-1000

David Stellings
250 Hudson Street, 8th Floor
NY, NY 10012
212-355-9500
dstellings@lchb.com

srosenthal@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com

**BOIES, SCHILLER & FLEXNER LLP**
**BARON & BUDD, PC**
David Boies, Esq.
Motty Shuhnan, Esq. (Fla Bar. No. 175056)
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
Fax: (914) 749-8300
dboies@bsfllp.com
mshulman@bsfllp.com

Stephen N. Zack, Esq. (Fla. Bar. No. 145215)
Mark J. Heise, Esq. (Fla. Bar No. 771090)
100 Southeast 2nd Street, Suite 2800
Miami, FL 33131
Tel: (305) 539-8400
Fax: (305) 539-1307
szack@bsfllp.com
mheise@bsfllp.com

**POWER ROGERS & SMITH, P.C.**
Todd A. Smith
tsmith@prslaw.com
70 West Madison St., 55th Floor
Chicago, IL 6060
T: 312-236-9381

**BARON & BUDD, PC**
Roland Tellis
rtellis@baronbudd.com
David Fernandes
dfernandes@bardonbudd.com
Mark Pifko
mpifko@baronbudd.com
15910 Ventura Blvd.,
Suite 1600
Encino, CA 91436
T: 818-839-2333